DECISION ON DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS NEGLIGENCE CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION
The Hierarchical Defendants move under Rule 12(b)(1) to dismiss any and all claims against them which arise out of allegations of negligence on their part. They base their motion on the religion clauses of both the state and federal constitutions which they allege deprive this Court of subject matter jurisdiction over Plaintiff's negligence claims. For the reasons set forth below, the Court denies Defendants' motion.
 I Facts and Travel
Christopher Young ("Young") commenced this action against John Petrocelli ("Petrocelli") and also against the so-called Hierarchy Defendants. In his 150-page complaint, Young alleges that he was sexually molested during his minority by the Reverend John Petrocelli and claims that the co-defendants, Hierarchy Defendants, are liable to him for injuries and damages he suffered as a result of the assaults. In essence, Plaintiff contends that the Hierarchy Defendants engaged in both negligent and intentional misconduct by negligently, willfully, intentionally and recklessly disregarding his rights by permitting Petrocelli to have contact with *Page 2 
him and other children after he was known to them as a child molester. Young alleges that such willful and negligent misconduct occurred in connection with the following: hiring, supervising and retaining Petrocelli after they had actual or constructive knowledge that he was a sex offender and unfit to have access to children; failing to keep their premises reasonably safe; conspiring, fraudulently concealing and misrepresenting the dangers associated with having contact with Petrocelli; inflicting Young with emotional distress; violating their duty to act in loco parentis; invading Young's privacy; tortiously interfering with his parent/child and family relationship; breaching their fiduciary duty to him; and breaching their statutory reporting duties to him. Young claims that the Hierarchy Defendants are liable to him under the doctrine of respondeat superior and further alleges that their wrongful conduct was tantamount to criminality.
Young asserts that Petrocelli had opportunities to molest him by virtue "of his position as a servant or agent under the authority, supervision, employ or control of" the Hierarchy Defendants. He further alleges that "the Hierarchy defendants exerted control over and/or assumed responsibility for [Petrocelli], thus establishing and maintaining a relationship with a corresponding duty to refrain from intentionally engaging in a knowing and deliberate course of conduct resulting in or substantially certain to result in harm to innocent child victims, including Plaintiff" and that they breached that duty. Additionally, Young asserts that because the Hierarchy Defendants "knew that many priests in the Diocese of Providence had sexually molested children," that it was their policy and practice to "secrete the identities, retain the services of, and protect pedophiles, ephebophiles and/or other sexual offenders who are or had been Roman Catholic priests" and that they did so to avoid adverse impacts on "revenues collected by the church from parishioners." *Page 3 
Furthermore, Plaintiff alleges that the Hierarchy Defendants "treated the sexual assaults of children by priests as scandal that was to be suppressed at any cost, knowing that suppression put the youth of the Diocese of Providence at risk." Plaintiff asserts that the Hierarchy Defendants operated a private psychiatric treatment system for treatment of priests exhibiting psychosexual disorders "to conceal and suppress the existence of the problem . . . and to affirmatively deceive the public by misrepresenting that a priest [was] `on leave,' on `retreat,' on `sabbatical and/or participating in `advanced studies,' when in fact he [was] sent away for evaluation and treatment due to sexual misconduct." Plaintiff alleges that the primary concern of the Hierarchy Defendants was to further their own interests and protect the reputation of the priests, including Petrocelli, concealing "the danger offending clerics present by misrepresenting them as priests in good standing" in a variety of ways, including enabling them to have "continued unrestricted access to minors." Plaintiff further contends that the practices of the Hierarchy Defendants gave him the false impression that he could rely upon them to protect him and that they breached their fiduciary duty to deal with him in good faith and "with the highest degree of trust and confidence."
Plaintiff asserts that the conduct of the Hierarchy Defendants was wrongful in concealing complaints; discouraging prosecution and civil litigation; making false promises that they would address the complaints and take preventive measures against future harm; ignoring and failing to properly investigate complaints; mistreating complainants; suppressing results of investigations; failing to maintain adequate records of offenders and complaints; sealing records of litigation and settlements; transferring offenders to new parishes thereby exposing a new population of children to their abuse; maintaining known offenders in positions where they would have access to children; allowing them to return to prior assignments while misrepresenting the reasons for *Page 4 
their absence; permitting them to reside and serve as priests in settings where it was foreseeable that they would come into contact with youths; failing to suspend or remove them from their duties; holding them out as competent, moral and fit priests; failing to propose proper guidelines "for selection, maintenance, supervision and retention of priests"; failing to propose and implement policies to assist victims; giving refuge and defense to offending clerics; and, failing to warn parishioners and others that the cleric with whom they would reasonably have contact was, in fact, an offender.
The Hierarchy Defendants answered Plaintiff's complaint denying the material allegations contained therein and asserting certain affirmative defenses, including lack of subject matter jurisdiction, which defense forms the basis for the instant motion. Hierarchy Defendants contend that the Court cannot entertain Plaintiff's negligence claims without violating the religion clauses of both the State and Federal Constitutions. The Hierarchy Defendants argue that by adjudicating the negligence claims, the Court will become unconstitutionally entangled in religious doctrine, practice, or church polity. Resolution of such claims will necessarily require the Court to regulate the manner in which a Catholic bishop selects, assigns, supervises, and disciplines priests and that such regulation violates the First Amendment of the United States Constitution, as applied to the states through theFourteenth Amendment, and the First Amendment of the Constitution of the State of Rhode Island. Plaintiff objects to the motion and notes that most cases that favor Hierarchy Defendants' position involve issues other than child molestation.
 II Analysis
Certainly, there are disputes involving religious orders over which the court has no subject matter jurisdiction. The United States Supreme Court addressed this issue in the case of *Page 5 Serbian Eastern Orthodox Diocese for the United States of America andCanada v. Milivojevich, 426 U.S. 696 (U.S. 1976). Milivojevich involved a dispute over control of the American-Canadian Diocese of the Serbian Orthodox Church. A bishop who had been suspended, removed, and defrocked filed a declaratory judgment action against the Diocese in a civil court in Illinois seeking a judgment declaring him the true bishop of the diocese and also seeking injunctive relief to enjoin church officials from interfering with church assets. Id. at 695-96. For its part, the church counterclaimed seeking a declaratory judgment that plaintiff had been removed as bishop and that the diocese had been properly reorganized. Id. at 696. The Illinois Supreme Court entertained the dispute and entered a judgment in favor of the plaintiff based upon its interpretation of the church's constitution, penal code, and internal regulations. Id. at 708. On certiorari, the United States Supreme Court reversed the decision holding that it violated the First andFourteenth Amendments by interfering with the decisions of a hierarchical church.Id. at 698. The court held that although the resolution of the dispute also determined control of church real estate, the case was essentially a religious rather than a property dispute. See id. at 709. A civil court cannot conduct its own inquiry into "religious issues of doctrine or polity." Id. To do so would require the court to interpret ambiguous religious law and usage and would violate the First Amendment. It would be tantamount to providing a civil determination of religious doctrine. As the Court stated:
 ". . . where resolution of the disputes cannot be made without extensive inquiry by civil courts into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them." *Page 6 
Id. at 709; see also Lott v. Eastern Shore Christian Ctr.,908 So. 2d 922, 928, 930-31 (Ala. 2005) (the court could not grant a temporary restraining order preserving the plaintiff's church membership because membership is an ecclesiastical matter; thus, the First Amendment of the United States Constitution prohibits judicial resolution); Dobrota v.Free Serbian Orthodox Church "St. Nicholas", 952 P.2d 1190, 1194, 1196
(Ariz.Ct.App. 1998) (the court could not decide a wrongful termination claim between a priest and the church because hiring and firing of clergy is a matter reserved to the church, but could compute the amount owed the priest after an ecclesiastical court decided that the priest was owed compensation); Maffei v. Roman Catholic Archbishop,867 N.E.2d 300, 306 (Mass. 2007) (the court refused to inquire into any alleged pastoral duties owed by the priesthood to its laity over matters of canon law, specifically the creation of a fiduciary relationship that inheres in a shared faith).
The Hierarchy Defendants argue that the reasoning set forth in the aforementioned cases applies equally to the negligence claims brought by Young. They assert that when a bishop performs his supervisor function, it is of an intrinsically religious nature and cannot be controlled by the State. Such functions are performed under the Roman Catholic Church's Code of Canon law, obeying and applying scripture, and ministering to the priest. Hierarchy Defendants' contend that if Young is permitted to pursue his negligence claims, the Court will be examining the validity of religious beliefs and interfering with clerical counseling. Hierarchy Defendants argue that such review is barred by both the Free Exercise and Establishment Clauses of theFirst Amendment.
In support of their position, Hierarchy Defendants rely upon the reasoning set forth in the dissenting opinion of a 2005 Mississippi case, Roman Catholic Diocese v. Morrison, 905 So. 2d 1213, 1248-56
(Miss. 2005) (Smith, C.J., dissenting). The dissent in that case opined that the *Page 7 
alleged tortious acts were tantamount to claims of clergy malpractice and concluded that the First Amendment Doctrine of Church Autonomy precluded the court from asserting jurisdiction in such matters.See id. at 1249. The dissent in Morrison challenged the majority holding that Chief Justice Smith wrote which would allow the courts to exercise state power to regulate the manner in which a bishop "selects, assigns, supervises, and disciplines his priest, as well as what he does or does not say about the priest to the parishioners." Id.
The Hierarchy Defendants urge this Court to apply theMorrison dissenter's reasoning when determining the instant motion. Following the view expressed in the Morrison dissent, Hierarchy Defendants argue that the negligence claims involve ecclesiastical questions which ought not to be decided by civil courts. The Hierarchy Defendants aver that to adequately decide the issues raised by Plaintiff Young — that is, to determine whether the bishop and other members of the church hierarchy acted reasonably — the Court would have to become immersed in theological criteria. They argue that this immersion would be necessary because the Court would have to determine the standard of care exercised by a reasonable and prudent bishop or other member of the church hierarchy. In the alternative, the Court would have to judge the church hierarchy's conduct without regard to whether their acts or omissions violated or conformed to church teachings, the vows they took, and canon law. See Morrison, 905 S. 2d at 1253.
The Court rejects this reasoning and finds the reasoning set forth in the majority opinion in Morrison, and in cases from other jurisdictions, more persuasive than the dissent cited by the Hierarchy Defendants.
In the case of Malicki v. Doe, 814 So. 2d 347 (Fla. 2002), the Florida Court rejected the First Amendment claims of church hierarchy defendants, stating, "the First Amendment does not *Page 8 
provide a shield behind which a church may avoid liability for harm caused to a . . . parishioner arising from the alleged sexual assault or batter by one of its clergy. . . ." Id. at 351. The Florida Court focused on the nonreligious nature of the alleged misconduct that formed the basis for the negligence claims, sexual molestation. Seeid. at 360-61. The court held that claims of negligent hiring and supervision of a priest are not deeply rooted in religious belief regardless of whether the determination of the claims results in an incidental effect on the practice of religion. Id.
Likewise, in the instant case, inquiry by this Court into the basis of similar claims will merely constitute the application of a neutral law and will not impose upon or significantly restrict the Hierarchy Defendants' religious beliefs or practices.
In Rosado v. Bridgeport Roman Catholic Diocesan Corp., 716 A.2d 967,969, 973 (Conn.Super.Ct. 1998), the Connecticut Court held that theFirst Amendment did not preclude a claim of negligent supervision against the church in a case involving sexual abuse allegations against one of its priests. The court noted that despite the principle that a government cannot selectively impose burdens on religion, claims of institutional negligence did not require inquiry into religious doctrine or belief, but rather, were applications of secular standards to secular conduct. Id. at 970. The court's consideration of the case based upon allegations of negligent supervision would not prejudice or impose upon religious beliefs or practices. Id. at 970. Adjudication of the case would involve an examination of defendant's alleged role in permitting one of its employees to engage in conduct that defendants, as employers, and society in general, expressly prohibit. Id. The court also noted that a person's religious beliefs or practices have never been held to excuse one from an otherwise valid law prohibiting conduct within the State's purview. Id. at 970-71. The court refused to create blanket protection for the church in matters such as the *Page 9 
protection of minors and held that the claims could be adjudicated on purely secular principles and standards. Id. at 973.
In Bivin v. Wright, 656 N.E.2d 1121 (Ill.App.Ct. 1995), the plaintiff alleged a series of negligent acts against the church, including failure to supervise, warn, adequately train, and dismiss a member of the clergy. Id. at 1123. The Illinois Court found that the court could determine the claims by applying neutral principles of law without relying on interpretation of religious doctrine. Id. at 1124. As such, "mandatory deference to religious authority is not required by thefirst amendment. . . ." Id. The court concluded that adjudication of the complaint could be decided on neutral principles of law and would not involve inquiry into religious doctrine or church law since the conduct alleged is not rooted in religious beliefs or practices. Id.
The Morrison case, like the instant one, involved negligent claims against the church hierarchy based upon allegations of child molestation by a former priest. See Morrison, 905 So. 2d at 1219-20. In the majority opinion, the court engaged in a thorough "Freedom of Religion" analysis, addressing the Establishment Clause; the Free Exercise Clause; and the Doctrine of Church Autonomy. Id. at 1224. That analysis is equally applicable to the instant case.
Citing the test set forth in Lemon v. Kurtzman, 403 U.S. 602 (1971), for its review of the Establishment Clause, the Mississippi Court acknowledged that the Constitution invalidates government action when it is excessively entangled in religion, but found no excessive entanglement under allegations of sexual molestation. SeeMorrison, 905 So. 2d at 1225, 1226. The court concluded that sexual molestation of children, as well as providing relief to victims of such conduct, is not remotely involved in ecclesiastical rules or religion itself. Id. at 1226. In fact, the court stated: "failing to provide relief would be tantamount to imposing less stringent *Page 10 
requirements on priests and religious institutions concerning the protection of children from sexual molestation than those generally imposed on others by society." Id. at 1229-30. The Morrison Court concluded that, as it relates to claims of sexual molestation, civil courts may inquire into a religious institution's relationship with its priests to determine whether the institution had power and authority over the priests and also knowledge and information pertaining to the improper acts. See id. at 1230. If so, then the religious organization would be treated no differently than any other institution to which the common law applies. Id. at 1230. This Court agrees.
Turning to the Free Exercise Clause, the Morrison Court noted that although the First Amendment protects a person's right to believe in religion, it does not provide absolute protection of one's right to act on those religious beliefs. Id. at 1230 (citing Cantwell v.Connecticut, 310 U.S. 296 (1940)). Courts must balance the competing interests of the State in facially neutral laws and practices against a person's refusal to comply with such laws based upon religious beliefs. The Court concluded that where one's well-established and sincere religious beliefs would be violated by compliance with a neutral government law or practice, the Free Exercise Clause may apply.See Wisconsin v. Yoder, 406 U.S. 205 (1972). In Yoder, the United States Supreme Court found that Wisconsin's compulsory school attendance law unduly burdened the Free Exercise Clause by forcing Amish parents to send their children to public school. This violated core Amish religious beliefs requiring them to remain "aloof from the world." The holding inYoder is distinguishable from cases involving acts of child molestation. Similarly, the Free Exercise Clause will not permit a person to rely on religious motivation as an excuse for disobeying generally applicable laws, such as those prohibiting possession of illegal drugs.See Employment Div. Dep't of Human Res. v. Smith, 494 U.S. 872, 882
(1990). In *Page 11 Employment Division, the court rejected the claims of two native Americans seeking unemployment benefits after having been discharged from work for ingesting an illegal hallucinogen as part of their religious ceremonies. See id. The conduct sought to be regulated in the Young case — namely, accusations of child molestation by a Catholic priest — as in Employment Division and in Morrison, is not rooted in religious belief. See Morrison, 905 So. 2d at 1226. As such, the Free Exercise Clause is not implicated and will not bar civil litigation of Young's claims. See id. at 1237.
Finally, the Morrison Court considered whether the Doctrine of Church Autonomy barred a civil court from considering such claims.See id. at 1235-37, 1247. The Doctrine of Church Autonomy essentially protects religious organizations from secular control and empowers them to control and ordain themselves in "internal, ecclesiastical matters."Morrison, 905 So. 2d at 1236. In essence, a secular court will not exercise any ecclesiastical jurisdiction and must keep itself removed from the inner-workings of a religious organization. Id. Purely secular actions, particularly those involving third-parties outside the church, do not carry with them the perceived danger of excessively entangling a court in essentially religious controversies. Id. at 1237 (quotingGen. Council on Fin. Admin. of the United Methodist Church v. SuperiorCourt, 439 U.S. 1355 (1978)). The Morrison Court concluded that the pure secular nature of allegations of negligence arising out of allegations of sexual molestation of children render the Doctrine of Church Autonomy inapplicable. Morrison, 905 So. 2d at 1237.
In the instant case, the allegations involve a third-party, outside the church, Christopher Young. Young's claims that the church hierarchy negligently hired, supervised and retained a pedophile priest are not deeply rooted in religious belief or practices. See id. The Court rejects Defendants' argument that such functions should be shielded by the First Amendment because *Page 12 
they are performed under the Church's Code of Canon law. The Hierarchy Defendants cannot avoid the instant litigation on the argument that the alleged acts or omissions constituted obeying and applying scripture, and ministering to the priest. Contrary to Hierarchy Defendant's contentions, this case can be determined based upon neutral principles of law and will not involve inquiry into church law.
 Conclusion
For the reasons set forth herein, the Hierarchy Defendants' Motion to Dismiss is denied. Plaintiff's negligence claims, at this procedural juncture, do not involve excessive entanglement of church and state so are not barred by the religion clauses of either the State or Federal Constitutions. Counsel shall submit an appropriate order consistent with this decision.